[No. A079373. First Dist., Div. Three. Dec. 23, 1998.]

PATSY R. BURLESCI, Plaintiff and Appellant, v.
ROBERT C. PETERSEN, as Trustee, etc., et al., Defendants and
Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication (pts. 1, 3 and 6 and introduction and disposition).

## COUNSEL

Elizabeth Williams for Plaintiff and Appellant.

Abbey, Weitzenberg, Kelly, Nadler, Hoffman & Emery and Lewis R. Warren for Defendants and Respondents.

---

**OPINION**

**PARRILLI, J.**—After plaintiff Patsy R. Burlesci presented her evidence in an action for conversion, fraud, negligent misrepresentation, intentional and negligent infliction of emotional distress, imposition of a constructive trust, and an accounting, the court granted nonsuit to defendant James Cummings.[1] Burlesci appeals. We conclude that the evidence, viewed in the light most favorable to Burlesci's claims, was sufficient to avoid a nonsuit on all causes of action except fraud and negligent misrepresentation. Accordingly, we affirm the judgment as to the latter claims, and otherwise reverse.

### 1. *Standard of Review*

■ A defendant is entitled to nonsuit if the trial court determines the evidence presented by the plaintiff is insufficient as a matter of law to permit a jury to find in her favor. The court may not weigh the evidence or consider the credibility of witnesses. Instead, it must accept the evidence most favorable to the plaintiff as true and disregard conflicting evidence. The plaintiff's evidence must be given all the value to which it is legally entitled, including every legitimate inference that may be drawn in the plaintiff's favor. A mere "scintilla of evidence" is not enough, however. There must be substantial evidence creating a conflict for the jury to resolve. In reviewing a grant of nonsuit, we follow the same rules requiring the evidence to be evaluated in the light most favorable to the plaintiff and least favorable to the defendant. All presumptions, inferences, and doubts are resolved against the defendant. We may not affirm, unless judgment for the defendant is required as a matter of law. (*Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948].)

### 2. *Facts**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1]Cummings died after trial, and his personal representatives were substituted as respondents after the briefs were filed. For simplicity's sake, however, we shall refer to "Cummings" as the respondent.

*See footnote, *ante*, page 1062.

### 3. Conversion

■ Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 144 [271 Cal.Rptr. 146, 793 P.2d 479], and fn. 38; *Oakdale Village Group* v. *Fong* (1996) 43 Cal.App.4th 539, 543-544 [50 Cal.Rptr.2d 810].)

■ Burlesci contends the evidence was sufficient to establish that Cummings converted the Burlescis' restaurant equipment. We agree the conversion claim should have gone to the jury. Cummings relies on *Zaslow* v. *Kroenert* (1946) 29 Cal.2d 541 [176 P.2d 1], for the propositions that conversion requires an intentional interference with property rights, and a demand for the return of personal property being stored by the defendant. *Zaslow*, however, did not state these requirements generally. The case involved a dispute between parties with competing claims to real property. The defendants took possession of a house on the property, changed the locks, and eventually removed the plaintiff's personal property and placed it in storage. The court decided the parties held the property as tenants in common, and noted that merely taking possession of a building and locking it does not amount to a conversion of personal property inside. Furthermore, the defendants had notified the plaintiff that he could secure the return of his personal property, with no response from the plaintiff. In these circumstances, the court held the plaintiff had to show an intention by the defendants to exercise ownership over the personal property, such as a refusal to honor a demand for the return of the goods. (*Id.* at pp. 545-551.)

■ The general rule is that "[t]he foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action." (*Poggi* v. *Scott* (1914) 167 Cal. 372, 375 [139 P. 815]; accord, *Byer* v. *Canadian Bank of Commerce* (1937) 8 Cal.2d 297, 300 [65 P.2d 67]; *Moore* v. *Regents of University of California*, *supra*, 51 Cal.3d at p. 144, fn. 38.) A gratuitous bailee like Cummings is held

to the same strict standard. (*Byer* v. *Canadian Bank of Commerce, supra*, 8 Cal.2d at pp. 300-301.) ■ Thus, it is irrelevant that Cummings may have felt he was justified in refusing to permit the Burlescis to sell their equipment in order to meet their loan obligations to him. Nor does it matter that the Burlescis may have felt they needed his permission for a sale. Cummings acted at his own risk when he interfered with their dominion over the equipment by refusing to honor their requests that it be released for sale, and by refusing to even hear a purchase offer from Dominic Affinito, the master lessee of the building leased by the Burlescis and the Burlescis' landlord.

Cummings argues that he had no obligation to release the equipment for sale, because as a secured creditor he was entitled to hold the collateral until the Burlescis paid the underlying debt. Cummings recognizes he had no written security agreement, but relies on section 9203, subdivision (1)(a) of the California Uniform Commercial Code, which states alternate conditions for the attachment of a security interest—either "[t]he collateral is in the possession of the secured party pursuant to agreement . . . or the debtor has signed a security agreement which contains a description of the collateral . . . ."[4] Cummings acknowledges the terms of the agreement under which Carl Burlesci delivered the equipment to him may be disputed, but argues that voluntary delivery pursuant to an agreement of any kind is sufficient to create a valid security interest in the equipment. We disagree. A *security agreement* is required to establish a security interest. (*Komas* v. *Future Systems, Inc.* (1977) 71 Cal.App.3d 809, 813 [139 Cal.Rptr. 669]; *In re CFLC, Inc.* (Bankr. 9th Cir. 1997) 209 B.R. 508, 513.) Cummings relies on *Clark Equipment Co.* v. *Mastelotto, Inc.* (1978) 87 Cal.App.3d 88 [150 Cal.Rptr. 797], for the proposition that a secured party may retain the collateral no matter what the debtor's intent was when the secured party obtained possession. In *Clark*, the collateral was a tractor shovel that the debtor delivered to the secured party for repair. Cummings is not helped by the holding in *Clark*, however, because the creditor in that case had what Cummings did not have here—an enforceable written security agreement. (87 Cal.App.3d at p. 94.)

Even if the evidence established as a matter of law that the Burlescis submitted to an unwritten security agreement when they accepted Cummings's loan after he insisted on taking the equipment as collateral in addition to their home, Cummings still would not have a security interest

---

[4]In 1996, the Legislature added a new condition to California Uniform Commercial Code section 9203, subdivision (1)(a)—". . . the collateral is investment property and the secured party has control pursuant to agreement." "Investment property" means a security, security entitlement, securities account, commodity contract, or commodity account. (Cal. U. Com. Code, § 9115, subd. (f).)

under California Uniform Commercial Code section 9203 because he did not gain possession of the equipment "pursuant to" a security agreement. (*In re CFLC, Inc., supra*, 209 B.R. at p. 513.) Cummings was very clear in his testimony that he stored the equipment solely as a favor to Burlesci's husband, not as an assertion of his security interest. A creditor may not breathe life into an otherwise unenforceable unwritten security agreement by capturing the collateral pursuant to an agreement having nothing to do with security arrangements. A different rule could facilitate subterfuge. (Cf. Cal. U. Com. Code, §§ 9305 and 9302, subd. (1)(a); U. Com. Code com., par. 3, 23C West's Ann. Cal. U. Com. Code (1990 ed.) foll. § 9305, pp. 459-460 [creditor's assumption of possession does not relate back to date of earlier security agreement for purpose of determining priority of creditor's claim].)

Recognizing a security interest in these circumstances would violate the intent of California Uniform Commercial Code section 9203. "The formal requisite of a writing stated in this section is not only a condition to the enforceability of a security interest against third parties, it is in the nature of a Statute of Frauds. Unless the secured party is in possession of the collateral, his security interest, absent a writing which satisfies paragraph (1)(a), is not enforceable even against the debtor, and cannot be made so on any theory of equitable mortgage or the like. . . . The theory of equitable mortgage, insofar as it has operated to allow creditors to enforce informal security agreements against debtors, may well have developed as a necessary escape from the elaborate requirements of execution, acknowledgment and the like which the nineteenth century chattel mortgage acts vainly relied on as a deterrent to fraud. Since this Article reduces formal requisites to a minimum, the doctrine is no longer necessary or useful. *More harm than good would result from allowing creditors to establish a secured status by parol evidence after they have neglected the simple formality of obtaining a signed writing.*" (U. Com. Code com., par. 5, 23C West's Ann. Cal. Com. Code, *supra*, foll. § 9203, pp. 374-375, italics added.) Here, the fact that Cummings dropped his effort to foreclose against the equipment after discovering he lacked a written security agreement suggests he himself did not believe he had an enforceable unwritten agreement, despite his possession of the collateral.

The trial court erred when it granted nonsuit on Burlesci's conversion claim.

4., 5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1062.

### 6. Constructive Trust

█ Burlesci sought to impose a constructive trust on her home, alleging the value of the restaurant equipment converted by Cummings was sufficient to bring their loan payments current and avoid foreclosure. "A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner. [Citations.] The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing. [Citations.] [¶] The principal circumstances where constructive trusts are imposed are set forth in Civil Code sections 2223 and 2224. Section 2223 provides that '[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner.' Section 2224 states that '[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.' Under these statutes and the case law applying them, a constructive trust may only be imposed where the following three conditions are satisfied: (1) the existence of a *res* (property or some interest in property); (2) the *right* of a complaining party to that res; and (3) some *wrongful* acquisition or detention of the res by another party who is not entitled to it." (*Communist Party* v. *522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 990 [41 Cal.Rptr.2d 618], italics in original.) "[A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled." (*Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 600 [124 Cal.Rptr. 297].)

Cummings contends Burlesci has no basis for seeking a constructive trust if her conversion claim fails. He does not contend her conversion claim is an insufficient basis for seeking this remedy. We conclude Burlesci's claim for a constructive trust survives along with her conversion cause of action.

### 7. Accounting*

. . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1062.

## Disposition

The judgment is affirmed as to the causes of action for fraud and negligent misrepresentation. In all other respects the judgment is reversed. Burlesci shall recover her costs on appeal.

Corrigan, Acting P. J., and Walker, J., concurred.