**IMPAC WAREHOUSE LENDING GROUP, a California corporation, Plaintiff—Appellant,**

v.

**CREDIT SUISSE FIRST BOSTON LLC, f/k/a Credit Suisse First Boston Corporation; et al., Defendants—Appellees.**

No. 06–56024.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 2008.

Filed March 17, 2008.

Ronald Rus, Esq., M. Peter Crinella, Esq., Rus Miliband & Smith, Irvine, CA, for Plaintiff–Appellant.

Jeffrey Q. Smith, Esq., King & Spalding, New York, NY, Jeffrey A. Richmond, Esq., Heller Ehrman LLP, Jeanette M. Viggiano, Esq., Los Angeles, CA, for Defendants–Appellees.

Before: HALL, GRABER, and BERZON, Circuit Judges.

## MEMORANDUM *

Impac appeals the district court's dismissal of its complaint against Credit Suisse First Boston, LLC, and DLJ Mortgage Capital, Inc. It also appeals the district court's denial of its request for leave to amend. We affirm.

Impac, a warehouse lender, and General Mortgage Corporation, a mortgage broker not a party to this case, entered into a contract in June 2000 in which Impac agreed to fund certain of General Mortgage's loans with the expectation that it would receive the loan documentation in a reverse repurchase agreement transaction and recoup its money when General Mortgage sold the loans on the secondary market. Both parties appeared to comply with the terms of the contract for approximately three and a half years. However, on or about July 2004, Impac learned that General Mortgage was engaging in a fraudulent scheme whereby it delivered to Impac fraudulent documents for the loans funded, and then sold the loans on the secondary market using the original loan documents.

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Credit Suisse and DLJ, who were not parties to the Impac/General Mortgage contract, purchased twenty-four of these loans on the secondary market pursuant to a contract with General Mortgage dated November 2002.

Impac sued General Mortgage and initiated this action against Credit Suisse and DLJ after General Mortgage filed for bankruptcy. In its complaint, Impac alleges various claims against the defendants, including aiding and abetting fraud and conversion, conspiracy to commit fraud and conversion, negligence, and constructive trust.

■ As the district court held, Impac is unable to plead claims that reach these defendants, and therefore the complaint was properly dismissed. The aiding and abetting claims fail because, even if Impac could plead that defendants had actual knowledge of General Mortgage's fraud, the complaint does not assert that defendants substantially assisted the underlying wrongs of fraud or conversion, a required element of an aiding and abetting claim. *Neilson v. Union Bank of California*, 290 F.Supp.2d 1101, 1118 (C.D.Cal.2003). Substantial assistance requires that the defendants' actions be a "substantial factor" in causing the plaintiff's injury. *Id.* at 1128. Defendants' purchase of the loans on the secondary market did not contribute to Impac's injury. Any harm to Impac stemmed from General Mortgage's retention of the original loan documents for itself and transfer of fraudulent loan documents to Impac, thereby enabling it to obtain direct payment from purchasers of the loan and then to fail to fulfill its obligation to repay Impac for its original funding of the loans.

■ Impac's conspiracy to commit fraud and conversion claims were properly dismissed because the pleadings fail to adequately allege an agreement between defendants and General Mortgage to defraud Impac or convert its funds. *In re 3Com Sec. Litig.*, 761 F.Supp. 1411, 1418 (N.D.Cal.1990). The complaint states that defendants "knowingly, and willfully agreed and conspired" to engage in fraudulent conduct, but provides no facts supporting the existence of an agreement outside of defendants' purchase of loans from General Mortgage pursuant to a contract signed nearly two years before the alleged conversion of funds occurred. Such conclusory allegations are insufficient even under the notice pleading of Rule 8(a), *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."), much less the heightened standard of Rule 9(b) which applies to the conspiracy to commit fraud claim, *In re 3Com Sec. Litig.*, 761 F.Supp. at 1418.

■ Impac's negligence claim was also properly dismissed because Impac could not allege that defendants owed it any duty. *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 58, 77 Cal. Rptr.2d 709, 960 P.2d 513 (1998) ("[W]e decline to recognize a duty to avoid business decisions that may affect the financial interests of third parties, or to use due care in deciding whether to enter into contractual relations with another."). Similarly, the constructive trust claim cannot stand because Impac alleged no wrongful act on the part of defendants. *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1070, 80 Cal.Rptr.2d 704 (Ct.App.1985).

■ Last, we find that it was within the district court's discretion to deny leave to amend. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.1990). Future amendments would have been futile, especially given that Impac's three attempts

were unable to cure the inherent flaws in the complaint. *See id.* (" 'The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.' ") (quotation source omitted).

For the foregoing reasons, we AFFIRM the district court.