Filed 9/19/16  Thompson v. Lujan CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL THOMPSON, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MANOLITO LUJAN et al., <br><br> Defendants and Respondents. | F071658 <br><br> (Super. Ct. No. CV281151) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Lorna H. Brumfield, Judge.

Michael Thompson, in pro. per., for Plaintiff and Appellant.

Borton Petrini and Samire K. Elhouty for Defendants and Respondents.

-ooOoo-

Plaintiff appeals from the judgment entered against him after the demurrer to his second amended complaint was sustained without leave to amend.  The pleading alleged claims that defendants improperly influenced plaintiff's wife to transfer to defendants businesses and real and personal property in which plaintiff held an interest.  We conclude the second amended complaint adequately states causes of action that are not

---

[*]     Before Hill, P.J., Gomes, J. and Kane, J.

defeated by the determination of the nullity of plaintiff's marriage. Accordingly, we reverse.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff's second amended complaint alleged the following facts: Plaintiff and Patricia Pavlik entered into a general partnership in 1986, co-owning and operating numerous businesses in the tattoo and cosmetics industries. In 1988, they married. They subsequently purchased a 22-acre ranch in Tehachapi, with the proceeds of their jointly owned businesses, but put title in Pavlik's name.[1] They paid for the Tehachapi property by 2000. Although plaintiff has been incarcerated since before he met Pavlik, Pavlik visited him and communicated with him by telephone regularly. Plaintiff was fully engaged in the operation of the businesses. Between 1993 and 1996, plaintiff contracted for the construction of a laboratory, office facilities, and a caretaker's residence on the Tehachapi property. Under an alias, he founded the Tehachapi Mountain Research Center (TMRC), a scientific public benefit corporation with its principal office on the Tehachapi property.

In 2000, Pavlik was diagnosed with emphysema. Plaintiff agreed to allow defendants, Manolito and Mei Lujan, to live in the caretaker's residence on the property in exchange for caretaker services. Defendants used their position, their physical presence on the property, their knowledge of Pavlik's frail health, and their knowledge that plaintiff was incarcerated, to coerce Pavlik with threats and misrepresentations that her life was in danger and to extort from her property jointly owned by Pavlik and

---

[1] The second amended complaint alleges plaintiff was housed in the Protective Housing Unit of the prison as a protected witness. An attachment to the pleading indicates he testified against members of the Aryan Brotherhood prison gang, as a result of which he was "among the top five … on the Aryan Brotherhood murder contract 'hit' lists." The second amended complaint suggests plaintiff and Pavlik placed the Tehachapi property in Pavlik's name, as an unmarried woman, for her safety.

2.

plaintiff. In 2006, defendants coerced Pavlik to file a marital dissolution proceeding against plaintiff to obtain all rights to the business and property interests jointly owned by Pavlik and plaintiff.

In 2007, defendants forced Pavlik to transfer the jointly owned real property into a trust in her name with her as the sole trustee, even though this violated the restraining order imposed by the dissolution action. Defendants also submitted documents to the Secretary of State listing Manolito as chief executive officer of TMRC. Pavlik executed a fabricated loan agreement and deed of trust, indicating she owed $350,000 to Manolito, secured by a deed of trust on the Tehachapi property. In 2010, defendants forced Pavlik to use monies jointly owned by plaintiff and Pavlik to finance a restaurant for defendants.

On February 5, 2012, Pavlik died. Plaintiff remained co-owner of the businesses and property, real and personal, amassed by them over the previous 24 years. Plaintiff was listed on her death certificate as her surviving spouse. On February 24, 2012, the court in the dissolution action issued a ruling granting Pavlik's motion determining the marriage was a nullity. The ruling had no effect on plaintiff's property rights because the parties were still legally married at the time of Pavlik's death. Plaintiff obtained from the court a determination that Pavlik's one-half interest in the Tehachapi property passed to him as her surviving spouse on her death.

Plaintiff subsequently discovered defendants had filed a change of ownership of the Tehachapi property and held themselves out as owners; they had also taken possession of the businesses owned by plaintiff. Manolito falsely claimed he was Pavlik's son and Pavlik bequeathed the businesses and property to him. Defendants have no legitimate legal claim to the businesses or property formerly owned jointly by plaintiff and Pavlik and, since her death, exclusively owned by plaintiff.

The second amended complaint sought monetary damages, declaratory relief regarding plaintiff's rights of ownership of the businesses and property, real and personal, co-owned by Pavlik and plaintiff prior to Pavlik's death, and his standing as founder and

3.

director of TMRC.  Plaintiff also sought punitive damages, alleging defendants obtained his business and property interests by means of extortion and by knowingly filing false documents; they acted with malice and the intent to oppress Pavlik's free will.

Defendants filed a demurrer to plaintiff's second amended complaint, along with a motion to strike and a request for judicial notice.  After the matter was heard and argued, the trial court granted the request for judicial notice, sustained the demurrer without leave to amend, determined the motion to strike was moot, and ordered the action dismissed with prejudice.  Plaintiff appeals from the dismissal of his action.

## *DISCUSSION*

### I.  Standard of Review

"On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law.  [Citations.]  We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context.  [Citations.]  We deem to be true all material facts properly pled."  (*Traders Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43.)  We are not concerned here with whether the plaintiff ultimately may be able to prove the allegations of his pleading; we determine only whether any cause of action has been sufficiently alleged.  (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1397.)

"'We do not review the reasons for the trial court's ruling; if it is correct on any theory, … even if the court made its ruling for the wrong reason, it will be affirmed.'"  (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 637.)  "It is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory."  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

Denial of leave to amend, however, is reviewed for abuse of discretion; the denial will be reversed if there is a reasonable possibility the pleading can be cured by amendment.  (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497–1498.)

4.

## II. Sufficiency of the Record on Appeal

Defendants contend plaintiff presented an inadequate record to establish error in the judgment. They assert that, because the standard of review is abuse of discretion, plaintiff must provide a record that demonstrates the trial court's reasoning in reaching its decision. The record, however, does not include defendants' demurrer to the second amended complaint or their request for judicial notice filed in support of the demurrer. The record also does not include a reporter's transcript or other record of the demurrer hearing.

As discussed previously, however, the standard of review of the trial court's determination of the sufficiency of the pleading is de novo, not abuse of discretion. In reviewing that ruling, we assume the truth of the properly pleaded allegations and matters of which judicial notice was taken. (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 225.) We do not review the trial court's reasoning.

Defendants' demurrer to the second amended complaint and their request for judicial notice were not included in the record on appeal. Plaintiff designated them to be part of the record, but they were apparently omitted by the clerk. The register of actions reflects that both documents were filed with the trial court. Plaintiff, however, did not move the court to correct the record to include those documents prior to filing his opening brief. (See Cal. Rules of Court, rule 8.155(b).)[2]

The trial court granted defendants' request for judicial notice. According to defendants' opening brief filed in this court and plaintiff's opposition to the demurrer filed in the trial court, the subject of defendants' request for judicial notice was a

---

[2]  We note plaintiff attached the omitted documents (and omitted pages from his second amended complaint) to his opening brief. Attachments to a brief on appeal are permissible only when they are copies of materials found in the appellate record or citable materials that are not readily accessible. (Cal. Rules of Court, rule 8.204(d).) Because plaintiff did not request that the clerk correct the omission of these documents from the record, they are not materials in the appellate record and were not properly attached to the opening brief.

5.

February 24, 2012, order entered in plaintiff and Pavlik's dissolution proceeding, which determined that their purported marriage was a nullity because plaintiff was never properly divorced from his first wife. Plaintiff has requested that this court take judicial notice of the clerk's transcript in his appeal from the nullity order in the dissolution action; that transcript includes the February 24, 2014, nullity order. Defendants have not objected to plaintiff's request for judicial notice. Accordingly, we grant plaintiff's request and will consider the effect of that order in determining this appeal. The appellate record and the matters of which we take judicial notice are adequate for review of the challenged judgment.

## III. Sufficiency of the Pleading

"The general rule is that allegations of a complaint are to be liberally construed with a view to substantive justice between the parties." (*Careau & Co. v. Security Pacific Business Credit, Inc*. (1990) 222 Cal.App.3d 1371, 1387.) If the factual allegations of the complaint are adequate to state a cause of action under any legal theory, the demurrer must be overruled. (*Quelimane Co. v. Stewart Title Guaranty Co*. (1998) 19 Cal.4th 26, 38.) The cause of action alleged need not be the cause of action intended by the plaintiff. (*Id.* at pp. 38–39.)

### A. Declaratory relief

"A declaratory judgment action provides litigants with a quick, efficient means of resolving a disputed issue.… [A] party may ask the court for a declaration of rights or duties and the court may make a binding declaration of these rights." (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 897.) The declaratory relief statute provides: "Any person … who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, … may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises …. He or she may ask for a declaration of rights or duties, either alone or with

6.

other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time." (Code Civ. Proc., § 1060.)

"A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties be adjudged by the court. [Citations.] If these requirements are met and no basis for declining declaratory relief appears, the court should declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to favorable declaration." (*Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943, 947.)

The second amended complaint alleged plaintiff held an interest, as partner and husband of Pavlik, in their jointly owned business and the real property placed in her name for her safety. It alleged Pavlik wrongfully transferred ownership of the real property to a trust, of which she was the sole trustee, while the dissolution proceeding was pending and she was restrained from transferring any property she owned, individually or jointly. Additionally, she allegedly was coerced by defendants to execute a deed of trust to Manolito, securing a fabricated debt of $350,000, also in violation of the restraining order. As a result, defendants obtained the property after Pavlik's death, although plaintiff was still a co-owner of the property at the time of Pavlik's death, and plaintiff should have become the sole owner on her death. Defendants have since held themselves out as owners of the Tehachapi property. The second amended complaint further alleged defendants have taken possession of the business, TMRC, and Manolito somehow became listed with the Secretary of State as chief executive officer of TMRC, although defendants had no legitimate claim to the corporation or any of its offices.

The second amended complaint sought, among other relief, a declaration of plaintiff's "rights of ownership of all businesses and property, both personal and real, co-

7.

owned by Ms. Pavlik and plaintiff prior to her death and exclusively owned by plaintiff thereafter." Plaintiff also sought "declaratory relief as to his legitimate standing as the founder, initial director and Chairman of the Board of Directors" of TMRC.

The second amended complaint adequately alleged facts showing the existence of an actual controversy relating to the legal rights and duties of the parties with respect to the Tehachapi property and TMRC. It requested a determination and declaration by the court of those rights and duties. Consequently, the second amended complaint adequately alleges a cause of action for declaratory relief, and the demurrer should have been overruled on that ground.

### B.        Conversion

The second amended complaint indicated it was a complaint for "theft." Defendants contend there is no civil cause of action for "theft," and the closest tort cause of action is for conversion. They contend the second amended complaint did not adequately allege the elements of a cause of action for conversion.

"'Conversion is generally described as the wrongful exercise of dominion over the personal property of another. [Citation.] The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. [Citation.]' [Citation.] 'Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial.'" (*Regent Alliance Ltd. v. Rabizadeh* (2014) 231 Cal.App.4th 1177, 1181.)

Defendants assert the first element was not met, because plaintiff alleged conversion of real property, rather than personal property, and because he admitted he lacked title to the property. The allegations of the second amended complaint are not so

8.

limited, however. The pleading alleged: Plaintiff and Pavlik entered into a partnership and "pursued the successful co-ownership of numerous businesses," which were listed and described. They accrued substantial assets, including the Tehachapi property. They agreed that, "upon the death of either partner, the surviving partner/spouse would become sole owner of all business and property interests, both real and personal." Defendants used their position as caretakers of the Tehachapi property to facilitate the theft of plaintiff's property, "both personal and real."

The second amended complaint repeatedly referred to the theft of plaintiff's property, "both personal and real." It concluded that plaintiff was "the victim of theft of his rightful businesses, … and his rightful property, both personal and real, including its possession and use." Thus, the second amended complaint adequately alleged personal property as the subject of the alleged conversion.

Defendants also argue that plaintiff lacked title to the real property and could not establish a community property interest in it because his marriage to Pavlik was nullified in the dissolution action. Title to the real property is irrelevant to the conversion cause of action. Defendants have pointed to nothing in the second amended complaint or in any matter of which the trial court took judicial notice that established plaintiff lacked an ownership interest in the personal property plaintiff alleged was converted by defendants. Consequently, the second amended complaint adequately alleged plaintiff's ownership of personal property, defendants' theft of it by extortion (a disposition of the property in a manner that is inconsistent with the plaintiff's property rights), and plaintiff's damage. The demurrer should have been overruled on this ground as well.

C.    *Action to establish a constructive trust*

The second amended complaint also alleged facts sufficient to constitute a cause of action to establish a constructive trust over the real property. "'A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner.

9.

[Citations.] The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing.'" (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1069.) The main situations in which a constructive trust may be imposed are set out in the Civil Code. "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." (Civ. Code, § 2223.) "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." (Civ. Code, § 2224.)

These sections state the only conditions necessary to create a constructive trust. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 878.) "'In order to provide the necessary flexibility to apply an equitable doctrine to individual cases, these sections state general principles for a court's guidance rather than restrictive rules. [Citation.] Thus, it has been pointed out that "a constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled."'" (*Ibid.*)

The second amended complaint alleged plaintiff and Pavlik became business partners and later married. They purchased the Tehachapi property as co-owners with the proceeds from their businesses, but put title in Pavlik's name for her safety. Defendants forced Pavlik to transfer the jointly owned real property into a trust as her separate property, in her name only, with herself as the sole trustee. The pleading alleged this breached a contract between plaintiff and Pavlik and violated a restraining order imposed in the dissolution action. It also alleged Pavlik gave a deed of trust on the Tehachapi property to Manolito to secure a fabricated debt, then transferred title to him in payment of the debt. After Pavlik's death, the Kern County Superior Court issued an order indicating the Tehachapi property passed to plaintiff as Pavlik's surviving spouse. Nonetheless, defendants "illegally filed a change of ownership for the property … and

10.

currently hold themselves out as the owners of said property." Attached to the pleading is a grant deed, which indicates the successor trustee of Pavlik's trust transferred the property to Manolito after Pavlik's death.

Defendants argue plaintiff held no ownership interest in the property because the determination of the nullity of his marriage to Pavlik deprived him of any community property interest in property held in her name. This argument ignores the allegations that plaintiff held an interest in the property as Pavlik's business partner. Further, the determination of the nullity of the marriage of Pavlik and plaintiff did not nullify plaintiff's ownership interest (if any) in the property acquired by the parties during the invalid marriage.

When a marriage is void or voidable, but one party or both parties believed in good faith it was valid, a party with a good faith belief that the marriage was valid is deemed a putative spouse, and property acquired during the void marriage that would have been community property if the marriage had been valid is divided as if it were community property. (Fam. Code, § 2251.) In *In re Marriage of Tejeda* (2009) 179 Cal.App.4th 973, the court concluded: Once either party is determined to be a putative spouse, the union is a putative marriage and the statute requires the property of the putative marriage to be divided as if it were community property. (*Id.* at pp. 982–983; but see, *In re Marriage of Guo & Sun* (2010) 186 Cal.App.4th 1491, 1500–1501 (disapproved on another ground in *Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1126, 1128 fn. 12), disagreeing with *Tejeda* and concluding putative spouse status may be invoked only by the innocent spouse.)

Even if both parties were aware of the facts rendering their marriage invalid, they may be entitled to equitable division of property in which each held an interest. In *Schotte v. Schotte* (1962) 203 Cal.App.2d 28 (*Schotte*), wife petitioned for dissolution and husband sought annulment on the ground wife's Mexican divorce from her previous husband was not valid and she had still been married to him at the time of the parties'

11.

purported marriage. (*Id*. at pp. 29–30.) Husband also filed a separate action to impose a constructive trust on real property owned by wife, alleging he had advanced $12,000 for improvements, based on wife's promise she would make him a co-owner of the property. (*Id*. at p. 30.) Wife contended husband was estopped to deny the validity of their marriage because he was aware of the circumstances of the Mexican divorce at the time he married wife. (*Id*. at pp. 30–31.)

The court reversed the judgment of annulment: "A man who, with full knowledge of the circumstances under which an invalid divorce was obtained by a previously married woman, relies upon that decree, participates in a marriage ceremony with the purportedly divorced woman and, thereafter, lives with her as husband and wife, is estopped to deny the validity of the marriage which they attempted to effect. [Citations.] The theory applied to such a situation 'is that the marriage is not made valid by reason of the estoppel but that the estopped person may not take a position that the divorce or latter marriage was invalid.'" (*Schotte*, *supra*, 203 Cal.App.2d at p. 31.)

Husband had contributed his separate funds to build rental units on wife's real property. (*Schotte*, *supra*, 203 Cal.App.2d at p. 32.) When he had questioned wife about the promised joint deed, she had put him off, then refused to transfer any interest to him. (*Ibid*.) The court concluded: "Where a husband invests his separate funds in improving the property of his wife relying upon her oral promise to convey to him an interest therein if he would do so, in the event she refuses to convey as promised her agreement will be enforced by imposing a constructive trust on that property in favor of the husband, because the breach of her oral promise constitutes a violation of the confidential relationship between them.… In many instances, in order to effect equity and justice the law disregards the difference between a valid and an invalid or void marriage. [Citations.] Furthermore, the evidence herein establishes that, regardless of their marital status, an actual confidential relationship existed between the subject parties, and this fact supports an application of the foregoing constructive trust rule." (*Id*. at pp. 32–33.)

12.

Additionally, the imposition of a constructive trust in favor of husband was correct on a theory that husband's contribution to the improvement of wife's property was obtained by undue influence. (*Id*. at p. 33.) The judgment in favor of husband on the property issue was affirmed.[3]

Thus, the finding of nullity of the marriage of Pavlik and plaintiff in the dissolution action was not dispositive of whether plaintiff held an interest in their allegedly jointly owned businesses, real property, and personal property. Nothing in the record of this action or the dissolution action indicates the court in the dissolution action made any division or determination of the ownership of the property of Pavlik and plaintiff. Defendants have not established that the nullity order or anything else prevents plaintiff, as a matter of law, from pursuing the causes of action alleged in his second amended complaint.

### *DISPOSITION*

The judgment is reversed. The trial court is directed to vacate its order sustaining defendants' demurrer to plaintiff's second amended complaint without leave to amend and to enter a new order overruling the demurrer. Plaintiff is entitled to his costs on appeal.

---

[3]    We note that, even when parties cohabit without benefit of marriage, one party may have an interest in property acquired by the other during the course of their relationship, when the parties so agreed in an express contract or when their conduct demonstrated "an implied contract, agreement of partnership or joint venture, or some other tacit understanding between the parties. The courts may also employ the doctrine of quantum meruit, or equitable remedies such as constructive or resulting trusts, when warranted by the facts of the case." (*Marvin v. Marvin* (1976) 18 Cal.3d 660, 665.)

13.