[No. B232073. Second Dist., Div. Five. Oct. 11, 2012.]

LOS ANGELES FEDERAL CREDIT UNION, Plaintiff and Respondent, v. EDGAR MADATYAN et al., Defendants and Appellants.

**COUNSEL**

Law Offices of Jilbert Tahmazian and Jilbert Tahmazian for Defendants and Appellants.

Anaya Law Group, Alana B. Anaya and Jonathan A. Malek for Plaintiff and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

Plaintiff and respondent Los Angeles Federal Credit Union (the Credit Union) prevailed in an action for conversion against defendants and appellants Edgar Madatyan and Elvis Madatyan[1] concerning an insurance check Edgar endorsed that was payable jointly to the owner of a damaged car and to GAD Auto Body Shop (GAD), a defendant owned by Elvis. The Credit Union, which had loaned the car owner money to purchase the car and had a lien on the car, claimed to have an interest in the insurance check because of the lien and because the loan agreement required the car owner to maintain insurance on the car. We hold that defendants converted the insurance proceeds because the Credit Union had an equitable lien against those insurance proceeds. We therefore affirm.

## BACKGROUND

On August 1, 2008, the Credit Union financed the purchase of a 2000 Bentley by Areg Khachikian in the amount of $136,126. The loan agreement provided that the car was collateral for the loan and required Khachikian to maintain insurance for the car. The insurance provision of the loan agreement stated, in part, "You promise to maintain property insurance in an amount necessary to protect Our security interest in the collateral, with a policy as specified by Us, in the amount and for the period required by Us, and with Us named as loss payee for Our protection. Such insurance shall protect against loss by fire, theft, and collision . . . ."[2]

Paul Pitts, the Credit Union's collection manager, testified that Khachikian fulfilled his responsibility to maintain insurance on the car through a policy

---

[1] For clarity, we will at times refer to the Madatyans by their first names.

[2] The entire provision stated, "You promise to maintain property insurance in an amount necessary to protect Our security interest in the collateral, with a policy as specified by Us, in the amount and for the period required by Us, and with Us named as loss payee for Our protection. Such insurance shall protect against loss by fire, theft, and collision and will provide 'all risks' hull insurance in the case of aircraft or boats and accessories thereto, if any. You may provide the required property insurance through an existing policy or by a policy You independently obtain and pay for from a person of Your own choosing, providing such person is reasonably acceptable to Us. You agree to deliver satisfactory evidence of the insurance policy to Us within any time period specified in any notice from Us or on Our behalf. If You do not get or keep this insurance, We may, at Our sole option, obtain insurance to protect Our interest and add its costs to Your loan, subject to the applicable interest rate, and You agree to pay for it (by such means as increasing Your payment or increasing Your loan term). We are under no obligation to obtain insurance on Your behalf. We have the authority to obtain, adjust, settle or cancel insurance and may endorse any party's name on any draft."

with Allstate. Pitts was not sure if the Credit Union was named as an additional insured on the policy as required by the loan agreement. During argument at the close of the court trial, the Credit Union's attorney conceded, and the trial court found, that Khachikian failed to name the Credit Union as an additional insured on the Allstate insurance policy.

In October 2008, Khachikian took his damaged car to GAD to be repaired. Elvis owned, and Edgar managed, GAD. An Allstate adjuster went to the body shop and appraised the damage to Khachikian's car at $39,697.35. Allstate sent Khachikian a check for that amount, naming Khachikian and GAD as payees, but not the Credit Union.

Khachikian took the insurance check to GAD and asked Edgar to endorse it. Edgar went with Khachikian to Bank of America to obtain a signature guarantee of Edgar's endorsement. Edgar endorsed the check on behalf of GAD. Khachikian left the bank without cashing the check. Edgar did not know Khachikian before Khachikian brought his car to GAD. Edgar did not know that the Credit Union had a lien on Khachikian's car before he endorsed the check.

In a declaration of which the trial court took judicial notice, Elvis stated that Khachikian's request that GAD endorse the check was not unusual. In Elvis's experience, "Sometimes customers decide to go somewhere else, do the work themselves, or simply hold the money until we complete the work so they know it was done right. Since I am confident of the quality of our work, and since we have a lien on the vehicle for any work performed (which means we do not release the vehicle until we are paid) I have not, in the past, refused to endorse the checks, nor, until now, experienced any problems due to endorsing a check."

Pitts testified that insurance companies make checks payable to an insured and an auto shop to ensure that the car is repaired. In Pitts's experience, such checks were cashed "[o]nly at the completion of the repair work to the vehicle[,] then the check is signed off by the Credit Union and paid to the body shop for the services completed." Pitts explained that in the usual case, insurance checks were made out to the Credit Union and the body shop, and not the "customer" and the body shop, because the Credit Union had an interest in the car. As a payee on the check, the Credit Union would endorse the check after the work was completed. That was the only way to ensure that the repairs were made.

Khachikian had not authorized GAD to work on the car, and GAD had not worked on the car. The insurance check was cashed. GAD did not receive any money from the check, from Allstate, or from Khachikian.

When Khachikian did not make the payments required by the loan agreement, the Credit Union repossessed the car from GAD, where it had been abandoned. Upon repossessing the car, the Credit Union determined that the car was damaged and that an insurance claim had been made with respect to the damage. The Credit Union incurred costs of $47,000 to repair the car. GAD charged the Credit Union $950 in car storage fees. Khachikian, a named defendant, filed for bankruptcy.

The trial court ruled that defendants converted the insurance check or its proceeds. In support of its ruling, the trial court found that Khachikian's loan agreement with the Credit Union required Khachikian to insure the car and name the Credit Union as an insured. Khachikian insured the car, but violated the loan agreement by not naming the Credit Union as an insured. The purpose of the insurance was to repair the car in the event it was damaged. The trial court found that by assisting Khachikian in negotiating the insurance check, defendants "interfered with the [Credit Union's] right" and therefore defendants were liable for conversion.

## DISCUSSION

Defendants contend that the evidence does not support the trial court's ruling that they converted the Credit Union's property because they did not receive and were never in control of the proceeds of the insurance check, a check cannot be converted solely by the act of endorsing it, the Credit Union had no interest in the check as the check was made payable to GAD and Khachikian, and defendants did not know of the Credit Union's existence. Substantial evidence supports the ruling.

■ "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. [Citations.]" (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066 [80 Cal.Rptr.2d 704].) The basis of a conversion action " 'rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action.' [Citations.]" (*Ibid.*)

■ Substantial evidence supports the trial court's finding that the credit Union had an interest in the insurance proceeds represented by the Allstate check. When a party that is contractually obligated to purchase insurance for the mutual benefit of itself and another party breaches that obligation by purchasing insurance solely for its own benefit, an equitable lien is created in the uninsured party's favor against any resulting insurance proceeds. (*Gordon v. J. C. Penney Co.* (1970) 7 Cal.App.3d 280, 285 [86 Cal.Rptr. 604].) Khachikian's loan agreement with the Credit Union obligated him to purchase insurance naming the Credit Union as a loss payee to protect the Credit Union's interest in the car. Khachikian breached that contractual obligation by failing to name the Credit Union on the Allstate insurance policy thereby creating an equitable lien in the Credit Union's favor on the proceeds from that policy. (See *ibid.*)

Substantial evidence also supports the trial court's finding that defendants wrongfully interfered with the Credit Union's interest in the insurance proceeds. An equitable lien is a property interest that can be converted. (*McCafferty v. Gilbank* (1967) 249 Cal.App.2d 569, 574–576 [57 Cal.Rptr. 695] (*McCafferty*).) In *McCafferty*, the former wife settled a judgment against her former husband for child support pursuant to an agreement that established an equitable lien on one-half of any recovery the husband received from a pending action arising from an automobile accident. (*Id.* at pp. 571–575.) The former husband's attorney in the automobile action, knowing of the plaintiff's equitable lien, endorsed two bank drafts that were made payable jointly to the attorney and the former husband in settlement of the automobile action, the settlement proceeds were distributed, and no payment was made to the former wife for her interest in the settlement proceeds. (*Id.* at p. 574.) The Court of Appeal held that the attorney converted the former wife's equitable lien on the settlement proceeds by endorsing the bank drafts. (*Id.* at p. 576.) Here, defendants converted the Credit Union's equitable lien against the insurance proceeds when Edgar endorsed the Allstate check. (*Ibid.*)

■ Because the Credit Union had an equitable lien against the insurance proceeds, with which defendants interfered when Edgar endorsed the Allstate check, defendants are liable for conversion. (*Burlesci v. Petersen, supra,* 68 Cal.App.4th at p. 1066; *Gordon v. J. C. Penney Company, supra,* 7 Cal.App.3d at p. 285; *McCafferty, supra,* 249 Cal.App.2d at pp. 574–576.) That defendants did not know that the Credit Union had an interest in the car or in the insurance proceeds is immaterial to a conversion action as " 'neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action.' " (*Burlesci v. Petersen, supra,* 68 Cal.App.4th at p. 1066.) Accordingly, we affirm the judgment.

## DISPOSITION

The judgment is affirmed. The Credit Union is awarded its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.