Filed 10/14/20  Trans World Sourcing v. Prend CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TRANS WORLD SOURCING, INC., Plaintiff, Cross-defendant and Appellant, | E071712 |
| v. | (Super.Ct.No. RIC1603278) |
| ROGER PREND, Defendant, Cross-complainant and Respondent; | OPINION |
| ROGER PREND, as Trustee, etc. et al., Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Randall S. Stamen, Judge.  Affirmed.

Law Office of Armand Tinkerian and Armand Tinkerian for Plaintiff, Cross-defendant and Appellant Trans World Sourcing, Inc.

Thompson & Colegate and Susan Knock Beck for Defendant, Cross-complainant and Respondent Roger Prend and Defendants and Respondents Roger Prend, as Trustee, etc. et al.

1

Trans World Sourcing, Inc. (Trans World) leased a commercial warehouse from Roger Prend to store its inventory of television mounting brackets, consoles, and related accessories. Trans World fell behind on its rent payments, and the parties entered into a new lease termination agreement. That agreement gave Prend a security interest in Trans World's stored inventory—that is, if Trans World defaulted under the new agreement, the inventory became Prend's property. After Trans World failed to make any payments under the lease termination agreement, Prend sold the inventory. Trans World brought this lawsuit against Prend and others, alleging numerous causes of action.

The trial court granted Prend's summary judgment motion. The court also granted a motion for attorney fees by two dismissed defendants; months later, the court granted a motion to amend the attorney fees order nunc pro tunc. Trans World appeals from the judgment, arguing that there were triable issues of material fact. It also appeals from the order amending the attorney fees order nunc pro tunc. We affirm both.

BACKGROUND

I. *Factual Background*

In April 2014, Trans World leased the commercial warehouse from Prend for five years. The parties agreed that Trans World would pay $5,000 per month in rent. Trans World executed the lease through its chief executive officer, Anthony White. A real estate broker acting as a dual agent for both parties negotiated the lease.

By June 2015, Trans World was three months behind in rent and owed Prend $15,000. Prend had a buyer for the warehouse and wanted to move Trans World out so that he could close escrow. The parties thus entered into the lease termination agreement.

The broker again acted as a dual agent for both parties in negotiating the lease termination agreement.  The terms of the written agreement were as follows. Prend released Trans World from its obligations under the lease.  He agreed to move Trans World's inventory to a new warehouse at his expense.  For its part, Trans World agreed to pay the past due rent in four monthly installments of $900 and a final installment of $11,400.  Each payment was due without notice or demand by Prend, and there were no grace periods.

As security for Trans World's debt, Trans World granted to Prend "a first possessory security interest in all of [Trans World's] right, title and interest in" the inventory stored in the warehouse.  If Trans World failed to make any single payment under the lease termination agreement, or otherwise defaulted under the agreement, Prend could "[d]ispose of the [i]nventory in any manner selected by [him], without notice to [Trans World], or in lieu of such disposition, maintain, own and possess the [i]nventory." As "further security" for Trans World's debt, Trans World agreed to execute a conditional bill of sale in favor of Prend.  The conditional bill of sale was attached to the lease termination agreement as an exhibit.  The bill of sale stated that Trans World was selling, assigning, and transferring to Prend all of its inventory in the warehouse, and that the bill of sale would become effective only upon Trans World's default.

The lease termination agreement declared that the agreement and conditional bill of sale contained the entire understanding between the parties, and that those documents superseded all other agreements and understandings between the parties, whether "express or implied, oral or written."

3

Prend and White (on behalf of Trans World) executed the lease termination agreement on June 23, 2015. By June 30, the inventory had been moved to the new warehouse. Prend did not own the new warehouse and was paying to store the inventory there. According to the schedule set forth in the lease termination agreement, Trans World's first payment was due on July 1. Trans World never made any payments to Prend under the lease termination agreement.

In November 2015, Prend sold the entire inventory for $55,000 to an employee of the warehouse owner. According to Prend, he never communicated with Trans World's customers or tried to market the inventory; he did not know what the employee did with the inventory after the sale.

## II. *The First Amended Complaint*

Trans World brought this lawsuit in March 2016 against six defendants, including Prend individually, Prend as trustee of the Prend Family Trust, and RDP Ventures, a business entity managed by Prend. In the operative first amended complaint (FAC), Trans World acknowledged that White signed an agreement on June 23, 2015, but it alleged that Prend and the other defendants had doctored the lease termination agreement by placing White's signature page on a completely different document.

The FAC also alleged that the broker (as Prend's agent) had induced White into signing the lease termination agreement by making false promises—namely, that Trans World would have "exclusive [and] sole possession" of the new warehouse, its inventory "would be safe and secure" from theft, and no other party "could withdraw any stock from [Trans World's] remaining inventory."

4

The FAC alleged seven causes of action against Prend:  fraud, conversion or theft of the inventory, breach of contract, breach of the implied covenant of good faith and fair dealing, unfair competition, unfair business practices, and tortious interference with prospective economic advantage.

III. *Prend's Summary Judgment Motion*

Prend moved for summary judgment, arguing that the lease termination agreement authorized Prend to sell the inventory, and it contained a merger clause barring any other understandings between the parties.

In opposition to the motion, White argued that there were triable issues of material fact as to all causes of action.  According to White's declaration, the broker told White that Prend had a buyer for his warehouse, and the broker offered to relocate the inventory to the new warehouse and cap the amount Trans World owed at $15,000.  White responded that Trans World wanted "the same exclusive rights of possession" in the inventory and the warehouse that Trans World enjoyed at the old warehouse.  The broker assured him that Prend understood his concerns and had "no interest in the inventory except to speed up the close of escrow."  The broker later invited White to his office to sign the lease termination agreement.  White asked for a copy so that he and his attorney could review it, but the broker assured him that his concerns about "exclusive control" of the warehouse and inventory were addressed, and that there was no need for an attorney review.

White explained that when he arrived at the broker's officer, the broker "rushed" to show him the document and pointed out the provision requiring Prend to pay for

5

relocating the inventory. On the basis of the broker's "continuing assurances" that his exclusivity concerns were addressed, White signed the lease termination agreement. The broker told him that if Trans World needed a longer period to make its payments under the agreement, Prend would be "flexible." White said that the agreement did not include an exhibit or a conditional bill of sale. White asked for a copy of the agreement, and the broker said that he would provide one after Prend signed it. White repeatedly followed up with the broker afterward, but the broker never sent him the promised copy.

In his reply brief, Prend pointed out that White had apparently signed the lease termination agreement without reading it, and there was no evidence that he was forced or coerced into not reading it. Prend thus argued that White had a reasonable opportunity to discover the true terms of the agreement and could not claim that it was void for fraud.

The court granted summary judgment for Prend. It ruled that Prend had the right to sell the inventory under the lease termination agreement once Trans World failed to make the required payments. The court noted that the agreement contained a merger clause, and to the extent that Trans World was arguing the parties had agreed to terms contradicting Prend's security interest, the court was not considering those terms. The court entered judgment for Prend.

IV. *Motion for Attorney Fees*

Trans World voluntarily dismissed two other defendants from the lawsuit—RDP Ventures and Prend in his capacity as trustee of his family trust. Those defendants moved for attorney fees and costs on the ground that they were prevailing parties under the attorney fees provisions of the original lease and the lease termination agreement.

6

Each defendant sought $27,263.43 in attorney fees, and together they sought $3,859.46 in costs.

Trans World did not oppose the attorney fees motion, and the day before the hearing in May 2018, the court issued a tentative ruling granting the motion. Trans World did not appear at the hearing. The court adopted the tentative ruling, granted the motion, and ordered the moving defendants to submit a proposed order. They did so, and the court issued the formal order in June 2018. The order stated that the court was granting the motion "in its entirety," and it awarded the defendants "their fees and costs in the amount of $3,859.46." The order failed to specify an amount for attorney fees.

A few days later, the moving defendants submitted a proposed amended order that expressly awarded them fees of $27,236.43 each, in addition to their costs. Trans World filed objections to the proposed amended order, arguing that the order was already correct because the moving defendants were not entitled to attorney fees at all. The moving defendants responded to the objections, arguing in part that Trans World had failed to oppose the attorney fees motion and could not do so belatedly.

The court held a hearing on Trans World's objections in September 2018. It ordered the moving defendants to file a motion to amend the attorney fees order. The moving defendants complied by filing a motion to amend the attorney fees order nunc pro tunc under Code of Civil Procedure section 473, subdivision (d). (Unlabeled statutory citations refer to this code.) They argued that the court had the authority to correct an order at any time so that the order conformed to the court's actual decision, and the court's decision had been to grant their attorney fees motion in its entirety. They had

7

erroneously omitted the amount of attorney fees when they had prepared the proposed order that the court had adopted.

In October 2018, the trial court granted the motion to amend the attorney fees order nunc pro tunc. At the hearing, the judge (Judge Randall S. Stamen) explained that another judge (Judge Sunshine S. Sykes) had been filling in for him when the proposed order was submitted in June 2018, so Judge Sykes had signed the attorney fees order. But the failure to include the amount of attorney fees was an oversight that Judge Stamen could correct because it did not properly reflect his ruling in May 2018. Trans World filed a notice of appeal from the order granting the motion and amending the attorney fees order nunc pro tunc.

DISCUSSION

I. *Summary Judgment*

Trans World contends that there were triable issues of material fact with respect to every cause of action against Prend. All of its arguments lack merit.

A. *Standard of Review*

The trial court may grant summary judgment if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law. (§ 437c, subds. (c), (f)(2); *Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.) A moving defendant must show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to the cause of action. (§ 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).)

8

Once the moving defendant has carried its initial burden, the burden shifts to the plaintiff to show a triable issue of material fact with respect to the cause of action or defense.  (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar*, at p. 850.)

We review summary judgment orders de novo and apply the same legal standard as the trial court.  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  We independently examine the record to determine whether there are triable issues of material fact and whether the moving party is entitled to summary judgment as a matter of law.  (*Ibid.*)

While we conduct a de novo review, we are "'limited to issues which have been adequately raised and supported in [the appellant's] brief.'"  (*Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260, 1271, fn. 5; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [appellate court reviewing summary judgment "is not required to discuss or consider points which are not argued or which are not supported by citation to authorities or the record"].)  Moreover, we consider only arguments or theories that the appellant preserved by raising them in the trial court. (*DiCola v. White Brothers Performance Products, Inc*. (2008) 158 Cal.App.4th 666, 676; *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872-873.)

B. *Fraud*

Trans World argues that there was a triable issue of material fact as to whether Prend secured the lease termination agreement through fraud. It relies on White's declaration to show that the broker promised Trans World exclusive control of the inventory in the new warehouse. Trans World asserts that the trial court should have considered that evidence because the parole evidence rule does not bar evidence of fraud.

It is true that the parol evidence rule does not bar extrinsic evidence for the purpose of showing an agreement is void for fraud. (*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1174, 1182.) The parol evidence rule protects the terms of a valid written agreement but does not preclude evidence challenging the validity of the agreement itself. (*Id.* at p. 1174.)

But even if the broker promised Trans World exclusive control of the inventory in the new warehouse, Trans World made no showing that the statement amounted to a false representation. The lease termination agreement acknowledged that the inventory belonged to Trans World, and it was only upon Trans World's default that Prend would have the right to the inventory. Trans World had the right to control the inventory, so long as it performed its obligations under the agreement. There was no evidence that the broker promised White exclusive control of the inventory *even after a default*. There was no evidence that the broker discussed what would happen in the event of Trans World's default at all.

Even if the broker's statement constituted a false representation, Trans World's argument fails for another reason. Justifiable reliance is an essential element of this

10

cause of action. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) "'Generally, it is not reasonable to fail to read a contract; this is true even if the plaintiff relied on the defendant's assertion that it was not necessary to read the contract.'" (*Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1072, 1080, italics in original omitted.) Accordingly, "a contract will not be 'considered void due to fraud if the plaintiff had a reasonable opportunity to discover the true terms of the contract.'" (*Ibid.*)

In this case, White did not dispute that he signed the lease termination agreement. Notably, his declaration was silent about whether he actually read the agreement. Likewise, he was silent on what terms were in the written agreement that he signed. Instead, he merely stated that he signed the agreement in reliance on the broker's assurances about exclusivity. But White could not have justifiably relied on the broker's statements when he had the opportunity to read the lease termination agreement but failed to do so. Had he read the agreement, he would have seen the unambiguous provision giving Prend a security interest.

Because Trans World does not cite any evidence of a false representation or justifiable reliance, we reject the argument that there were triable issues of material fact as to the fraud claim.

C. *Conversion*

As to the conversion cause of action, Trans World contends that there were triable issues of material fact about the terms of the lease termination agreement, whether Prend prevented Trans World from accessing the inventory after the relocation, and whether

11

Prend had the right to sell the inventory without notice to Trans World. The arguments lack merit.

"'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.'" (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387.)

The terms of the lease termination agreement gave Prend the right to the inventory after Trans World defaulted, and Trans World defaulted by failing to make its first payment on July 1, 2015 (and all payments thereafter). Accordingly, regardless of whether Prend restricted Trans World's access to the inventory or sold it without notice, his actions did not amount to conversion—the property belonged to him, and he could do whatever he wanted with it. Trans World's insistence that White and the broker agreed Trans World would have exclusive control of the inventory does not create a material factual dispute. As we have discussed, even if that were a term of the agreement, it does not address what would happen upon Trans World's default.

Trans World also argues that there was a triable issue as to whether it defaulted, because the broker promised that Prend would be flexible with payment dates. But Trans World did not raise this as a triable issue in its opposition brief in the trial court. It has therefore forfeited the argument on appeal. (*DiCola v. White Brothers Performance Products, Inc.*, *supra*, 158 Cal.App.4th at p. 676; *Saville v. Sierra College*, *supra*, 133 Cal.App.4th at pp. 872-873.)

12

D. *Breach of Contract and Breach of the Implied Covenant of Good Faith and*

     *Fair Dealing*

Trans World contends that there were numerous triable issues of fact as to the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. There are several problems with its arguments.

First, Trans World failed to raise almost all the claimed triable issues in its brief opposing summary judgment, so it has forfeited the arguments. Second, Trans World has forfeited many of its contentions by failing to support them with reasoned argument and authority. (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784.) As just one example, Trans World asserts that there was "a triable issue of fact as to the first day of payment." Trans World follows that with a single conclusory sentence, and no citation to authority, stating that it was unreasonable to require the first payment one day after relocating the inventory. Trans World does not explain why that would be unreasonable or how it might show that Prend breached the lease termination agreement. And we have no duty to develop appellants' arguments for them. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

Third, the only argument that Trans World has arguably preserved is meritless. In the trial court, Trans World argued that Prend breached the implied covenant of good faith and fair dealing by restricting Trans World's access to its inventory, which it needed to sell to meet its payment obligations under the lease termination agreement. On appeal, Trans World argues that Prend breached the lease termination agreement by preventing

13

Trans World from accessing its inventory. It cites White's declaration that Prend claimed ownership of the inventory almost immediately after the move and refused Trans World access.

That evidence does not show a disputed material fact as to breach of the agreement. Rather, it is merely a description of Prend's authorized actions. Prend claimed ownership of the inventory almost immediately after the inventory's relocation because that is when Trans World's default occurred and his right to the property became effective.

E. *Unfair Competition, Unfair Business Practices, and Tortious Interference with Prospective Economic Advantage*

Trans World claims that there are "multiple" material facts in dispute as to the causes of action for unfair competition and unfair business practices, arguing that Prend confiscated its property and illegally sold it below cost. But as we have explained, the lease termination agreement authorized Prend's actions. The opening brief relies on conclusory assertions that Prend's illegal or wrongful conduct must be unfair. It contains no reasoned argument or citations to authority demonstrating that a party's execution on its contractually authorized security interest amounts to unfair competition or an unfair business practice. Trans World has thus forfeited its argument that there were triable issues of fact on these causes of action. (*Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at p. 956; *Sporn v. Home Depot USA, Inc.*, *supra*, 126 Cal.App.4th at p. 1303; *Badie v. Bank of America*, *supra*, 67 Cal.App.4th at p. 784.)

The argument is forfeited for the additional reason that it contains no citations to evidence in the record. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) For instance, Trans World repeatedly asserts that its inventory was worth $395,000, and Prend therefore sold the inventory below cost, but Trans World does not direct us to evidence in the record that would support such a sum. We are not required to independently search the record in support of claimed errors. (*Ibid.*)

As to the final cause of action for tortious interference with economic advantage, Trans World's argument fails for the same reasons. Its argument consists of the assertion that there are material facts in dispute and a reference to the allegations of its FAC. The failure to cite evidence in the record, cite and apply relevant authority, and overall make a reasoned argument means that Trans World has forfeited the contention. Moreover, nowhere in its brief does Trans World cite evidence of any conduct by Prend that would constitute tortious interference. The undisputed facts show that Prend did nothing more than exercise his contractual rights.

F. *Remaining Forfeited Contentions*

Trans World raises two more arguments, but it fails to relate them to any particular cause of action. First, it contends that the lease termination agreement is unenforceable because the conditional bill of sale could not be severed from it. Trans World does not explain how the bill of sale rendered the lease termination agreement unenforceable, what evidence supports that argument, or what authorities support it. Moreover, Trans World did not raise the conditional bill of sale in its brief opposing summary judgment. For all of these reasons, the argument is forfeited.

15

Second, Trans World argues that the lease termination agreement contains an unenforceable liquidated damages clause under Civil Code section 1671. The argument is forfeited because Trans World did not raise it in the brief opposing summary judgment and cites no evidence to support it (which would have to include evidence supporting the claim that the inventory was worth $395,000).

In sum, all of Trans World's arguments are either forfeited or fail to demonstrate a triable issue of material fact. Accordingly, we affirm the judgment for Prend.

II. *Order Amending the Attorney Fees Order Nunc Pro Tunc*

Trans World argues that the trial court abused its discretion by awarding attorney fees to RDP Ventures and Prend in his capacity as trustee. Trans World contends that the moving defendants did not comply with the lodestar method in calculating their fees and did not show that the requested fees were reasonable.

Those are arguments that Trans World should have made in opposition to the attorney fees motion in the trial court. But it failed to oppose the motion, appear for the hearing on the motion, or appeal from the order granting the attorney fees motion. The order granting the motion has long been final, and Trans World's belated challenges to the merits of that order are thus forfeited. (*Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 509 [party who fails to timely appeal from an order cannot belatedly challenge it on appeal from a subsequent order].)

The issue properly before us is whether the court erred by granting the motion to amend the attorney fees order nunc pro tunc. The defendants moved under section 473, subdivision (d), which states: "The court may, upon motion of the injured party, or its

16

own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed." The court has the power to correct clerical errors "'whether made by the clerk, counsel or the court itself, so that the records will conform to and speak the truth.'" (*Ames v. Paley* (2001) 89 Cal.App.4th 668, 672.) The trial court determined that the attorney fees order did not accurately reflect its ruling, because it inadvertently omitted the amount of fees. The court therefore had the power to correct the mistake by including the exact fees in the order. Trans World fails to show that the court erred under section 473, subdivision (d).

## DISPOSITION

The judgment and the order amending the attorney fees order nunc pro tunc are affirmed. Respondents shall recover their costs of appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.
SLOUGH
J.

17