Filed 12/14/22  Wininger v. Long CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| JARRETT WININGER, | |
| Plaintiff and Respondent, | E078084 |
| v. | (Super.Ct.No. CIVDS1927561) |
| CASSANDRA M. LONG, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Affirmed.

The Law Office of Andrew M. Rosenfeld, and Andrew M. Rosenfeld for Defendant and Appellant.

Law Office of David P. Weilbacher, and David P. Weilbacher for Plaintiff and Respondent.

1

Jarrett Wininger brought suit against his father's widow, Cassandra Long, for conversion, money had and received, and related causes of action. Jarrett's father, Karl Wininger, designated Jarrett the pay-on-death beneficiary of Karl's bank account.[1] Jarrett alleged that Long unlawfully took over $100,000 from the account after Karl's death. After a one-day bench trial, the court entered judgment for Jarrett on the causes of action for conversion and money had and received. Long appeals, arguing that the record does not contain substantial evidence to support the judgment. We affirm.

BACKGROUND

I. *Allegations of the Complaint*

The complaint alleged as follows: Karl's bank account had a balance of over $115,000 when he died in May 2019. That money belonged to Jarrett, because Karl had named him the pay-on-death beneficiary of the account. Long withdrew $112,159.93 from the account after Karl's death.

On the basis of those allegations, the complaint alleged causes of action for conversion, money had and received, fraud, and violating Penal Code section 496 (receipt of stolen property). (See Pen. Code, § 496, subd. (c) [permitting the victim to bring an action for treble damages, costs, and attorney fees].)

II. *Trial Evidence*

Long and Karl lived together for seven years before marrying in November 2018. Karl died on May 10, 2019. He was sick with cancer for the last five years of his life.

---

[1] Because of their shared last name, we refer to Jarrett and Karl by their first names. No disrespect is intended.

2

During that period, Long cared for him and helped him with his financial and business affairs. She testified that she signed his name on checks with his permission and also conducted online banking transactions for him at his request.

According to Long, on April 27, 2019, Karl asked her to write a note stating: "I Karl B. Wininger wish to gift myself $100,000 for medical expenses." He dictated the note to her and signed it. Long understood the note as directing her to transfer $100,000 from Karl's family trust account to his personal bank account. She transferred the money as directed. Long took a picture of the handwritten note and emailed it to the bank where the family trust account was held. (The family trust account was at a bank in La Cañada, California. Karl's personal account was at a different bank in Big Bear Lake, California.)

Long further testified that on May 9, 2019, the day before Karl died, she initiated an electronic "bill pay" transaction to withdraw $100,000 from Karl's personal account. Five days later, on May 14, 2019, the bank generated a check made out to her for $100,000, and she endorsed the check the following day. She said that Karl authorized her to withdraw the money and wanted her to have it after he died. Karl did not wish to use the $100,000 for medical expenses, despite what the handwritten note said. The note did not say that he wanted her to have the money "[b]ecause the bank told him to put it exactly like this on the letter." Under the terms of Karl's trust, Long also inherited Karl's house after his death.

Long was not aware of any bank records showing that she had initiated the $100,000 transaction before Karl's death. She did not have any written records showing when she initiated the transaction.

Jarrett testified that on June 3, 2019, Long told him that he was the pay-on-death beneficiary of Karl's bank account. According to Long, she told Jarrett that he was the beneficiary as soon as she learned that information from the bank. But she also testified that she knew he was the beneficiary when she endorsed the $100,000 check on May 15.

After Jarrett learned that he was the pay-on-death beneficiary, he went to Karl's bank to close the account. The bank manager gave him a transaction report for the account. The report showed that at least $100,000 had been in the account when Karl died. The bank manager also told him that the $100,000 had been in the account when Karl died. The manager asked Jarrett if he knew anything about it. Jarrett and the manager did not discuss whether there were any transactions initiated before Karl's death that had not been completed at the time of his death.

Jarrett took the transaction report to Long "to resolve all the discrepancies with the different funds that had been removed." Besides the $100,000, Long withdrew some money after Karl's death "to pay bills and the like." She reimbursed Jarrett for those withdrawals. As for the $100,000, she told Jarrett that she could explain that withdrawal and asked him not to call the police.

Jarrett said that he and his father were not close early in Jarrett's life, but the two had grown increasingly close in the last 10 years before Karl's death. During the last month of Karl's life, Jarrett had four-day visits with him every week.

III. *Statement of Decision*

The court announced an oral statement of decision in favor of Jarrett on the causes of action for conversion and money had and received. The court explained that the case came "down to a determination of credibility between the plaintiff and the defendant." The court noted that it had observed both parties while they were testifying, and it found that Long lacked credibility and that her testimony was not believable. It concluded that Jarrett had offered "more believable evidence on the causes of action for money had and received and conversion," but it found that he had not carried his burden of proof on the remaining causes of action. The court entered judgment for Jarrett in the amount of $100,000 plus costs.

STANDARD OF REVIEW

We review the trial court's judgment following a bench trial for substantial evidence. (*Estate of Young* (2008) 160 Cal.App.4th 62, 75-76.) "We are required to accept all evidence that supports the successful party, disregard the contrary evidence, and draw all reasonable inferences to uphold the judgment." (*Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213.) "[T]he trial court is the 'sole judge' of witness credibility. [Citation.] The trial judge may believe or disbelieve uncontradicted witnesses if there is any rational ground for doing so. [Citation.] The fact

5

finder's determination of the veracity of a witness is final." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) Moreover, "[t]he testimony of a single witness, unless it is impossible or inherently improbable, will be sufficient to support the challenged findings." (*Antelope Valley Groundwater Cases* (2020) 59 Cal.App.5th 241, 260 (*Antelope Valley*).) "[I]t is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it." (*Harley-Davidson Inc.*, *supra*, at p. 213.)

DISCUSSION

"'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.'" (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387.) A cause of action for money had and received "'lies wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter.'" (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 937.)

A pay-on-death account is an "account payable on request to one person during the person's lifetime and on the person's death to one or more" pay-on-death beneficiaries. (Prob. Code, §§ 5139, 5140.) Thus, at the account holder's death, "any sums remaining on deposit belong" to the pay-on-death beneficiary. (*Id.*, § 5302, subd.

6

(b)(2).) "'Sums on deposit' means" the "balance payable on an account, including interest and dividends earned." (*Id*., § 5150, subd. (a).)

In this case, Long argues that there was no admissible evidence showing that $100,000 was on deposit in Karl's bank account at the time of his death. She contends that Jarrett therefore failed to prove the $100,000 belonged to him.

But the record contains substantial evidence of the amount on deposit at the time of Karl's death. Jarrett testified that when he went to the bank to close Karl's account, he learned from the transaction report that the account had a balance of at least $100,000 when Karl died. He also testified that the bank manager told him that $100,000 had been in the account when Karl died. There was nothing "impossible or inherently improbable" about that testimony (*Antelope Valley*, *supra*, 59 Cal.App.5th at p. 260), so it is sufficient to defeat Long's substantial evidence challenge.

Long's statement of facts in her opening brief does not discuss Jarrett's testimony. She cites only her own testimony that the day before Karl's death, she initiated an electronic transaction withdrawing $100,000 from the account. But she offered no written records showing that the transaction was initiated before Karl's death. And the court did not find Long to be a credible witness or her testimony to be believable. As the trier of fact, the court was entitled to disbelieve her, and we may not disturb that determination on appeal.

Long argues that there was no evidence of the amount on deposit when Karl died, because Jarrett "did not properly subpoena a bank employee or [bank] records." The

7

argument lacks merit. Jarrett called the current bank manager and attempted to introduce bank records through her. The manager was not the custodian of records, and the documents had not been delivered to the court pursuant to a subpoena duces tecum. (See *Kling v. Superior Court* (2010) 50 Cal.4th 1068, 1074 ["In civil actions, documents produced in response to a subpoena duces tecum for business records may be delivered to the clerk of the court . . ."].) The court excluded the records and did not permit the current manager to testify about the records.

But Jarrett's testimony regarding the amount in the account when Karl died was admitted. Long's opening brief fails to explain why his testimony is insufficient to support the judgment or why the court erred by admitting it. In her reply brief, Long argues that Jarrett's testimony is insufficient because his testimony did not establish (1) whether the bank manager knew the meaning of "[s]ums on deposit" (Prob. Code, § 5150) or (2) whether the manager knew of an electronic transaction initiated before Karl's death. Long has forfeited the argument by raising it for the first time in her reply brief without a showing of good cause. (*Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1064, fn. 2.) In any event, we are not persuaded by the argument. Long does not demonstrate why the claimed failure to establish the bank manager's knowledge rendered Jarrett's testimony inadmissible or insufficient to show the amount on deposit. And we have no duty to develop the argument for her. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

For all of these reasons, Long fails to show that the judgment is not supported by substantial evidence.[2]

## DISPOSITION

The judgment is affirmed.  Jarrett shall recover his costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ       

J.

We concur:

MILLER       

      Acting P. J.

CODRINGTON     

      J.

---

[2]  Jarrett has filed a motion for sanctions seeking nearly $30,000 in appellate attorney fees.  He argues that Long's appeal is frivolous and therefore was brought for an improper purpose.  We deny the motion.  Although the appeal lacks merit, "[a]n appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)