Filed 7/29/25  Haghighi v. Shea Properties CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HOSSEIN HAGHIGHI, | |
| Plaintiff and Appellant, | G063334 |
| v. | (Super. Ct. No. 30-2018-01010824) |
| SHEA PROPERTIES, LLC, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from orders of the Superior Court of Orange County, Walter P. Schwarm, Judge. Affirmed.

Rejali Law Firm and Omid Rejali for Plaintiff and Appellant.

Koeller, Nebeker, Carlson & Haluck, Robert C. Carlson, Julia L. Bergstrom and Kathryn Foust for Defendant and Respondent.

\*          \*          \*

The primary issue in this appeal is whether plaintiff Hossein Haghighi sued the proper entity. The undisputed evidence shows he did not. Defendant Shea Properties LLC was not responsible for his alleged harm.[1] Indeed, during discovery, Shea Properties LLC's counsel informed Haghighi that he had sued the wrong entity. Counsel asked Haghighi to dismiss Shea Properties LLC and offered to help substitute in the correct entity. Haghighi refused.

This case arises from a payment Haghighi missed on his apartment. An unlawful detainer action was filed against him by "Shea Properties," represented by attorney Gary Gough. "Shea Properties" obtained a default judgment (the default judgment). Gough later obtained writs of execution on behalf of "Shea Properties" and levied Haghighi's bank account. After this levy occurred, however, the default judgment was vacated due to procedural defects. The levied funds were not returned to Haghighi, so he sued Shea Properties LLC for conversion. After Haghighi closed his case at trial, Shea Properties LLC moved for nonsuit. The trial court granted the motion, finding there was insufficient evidence that Shea Properties LLC was "Shea Properties." Haghighi now appeals two of the court's orders.

First, Haghighi challenges the court's order granting the nonsuit motion. We find no error. There was insufficient evidence for a jury to find that Shea Properties LLC had converted Haghighi's funds. The undisputed evidence at trial showed Shea Properties LLC was an investment entity that did not manage apartment buildings and had never done business as "Shea

_____

[1] The parties' caption pages identify defendant as "Shea Properties, LLC." But the Statement of Information filed with the Secretary of State identifies defendant's name as "Shea Properties LLC."

2

Properties." Rather, two affiliated entities—nonparties J.F. Shea Co., Inc. (J.F. Shea), and Shea Properties Management Company, Incorporated (Shea Management—had used the dba "Shea Properties" at different times. Both J.F. Shea and Shea Management were also the property managers for the apartment that was the subject of the unlawful detainer action. And the undisputed evidence showed J.F. Shea had retained Gough.

Second, Haghighi argues the court improperly quashed notices to appear he had served on Shea Properties LLC to produce certain corporate executives at trial. But, even if this ruling were incorrect, Haghighi has not shown any resulting prejudice.

For these reasons, we affirm the trial court's orders granting Shea Properties LLC's nonsuit motion and motion to quash.

FACTS AND PROCEDURAL HISTORY

I.

THE UNLAWFUL DETAINER ACTION

On June 1, 2002, Haghighi executed a six-month lease (the lease) for an apartment in Woodbridge Meadows (the apartment building). At the time he signed the lease, the apartment building was owned by Woodbridge Meadow Apartments, LLC (Woodbridge). The lease was entered into by "Shea Properties" as the managing agent for Woodbridge, and Haghighi as tenant.

Haghighi failed to pay his rent in July 2002 because he was incarcerated about a week after he signed the lease, and remained in prison for over eight years. After Haghighi missed this rent payment, Gough filed an unlawful detainer action against him (the unlawful detainer action) on behalf of "Shea Properties."

In January 2003, Gough obtained a default judgment in the unlawful detainer action against Haghighi and in favor of "Shea Properties" for

3

$2,369.79 plus interest (the default judgment). Gough recorded an abstract of judgment in August 2005, which identified the judgment creditor as "Shea Properties."

Nearly a decade later, in December 2012, Gough filed an application to renew the default judgment and a memorandum of costs after judgment. Gough then levied Haghighi's bank account in 2016 and 2017 in the amount of $6,921.76. The two writs of execution under which the account was levied identify the plaintiff as "Shea Properties." After the 2017 levy, Gough filed an Acknowledgement of Satisfaction of Judgment, which identified the judgment creditor as "Shea Properties C/o Gary J. Gough."

The default judgment was set aside in July 2018 due to a service defect. Contrary to the proof of service attached to the unlawful detainer complaint, the evidence showed Haghighi could not have been served at his apartment in July 2002 because he had been incarcerated. However, the trial court's order did not address the prior levies of Haghighi's bank account. Nor did anyone return the levied funds to Haghighi.

II.

THE INSTANT LAWSUIT

Haghighi filed this lawsuit against Gough and Shea Properties LLC, among others, in August 2018. In response, Gough filed a special motion to strike under Code of Civil Procedure section 425.16,[2] which the trial court granted, and we affirmed. Due to his successful anti-SLAPP motion, Gough was awarded $16,229.86 in attorney fees and costs (the anti-SLAPP judgment).

---

[2] All further undesignated statutory references are to the Code of Civil Procedure.

4

Haghighi then filed an amended complaint that alleged a conversion claim against Shea Properties LLC.[3] This claim ultimately went to trial. Prior to trial, though, Haghighi served Shea Properties LLC a notice under section 1987, subdivision (b), to produce five executives at trial: Colm Macken, John Morrissey, Peter Shea, Jr., Toni Tinawin, and Bryan McGowan. Haghighi had not deposed any of these witnesses except for Tinawin. In fact, it appears Tinawin was the only witness Haghighi deposed in all of discovery.

Shea Properties LLC moved ex parte to quash the notice to appear (the motion to quash) as to Macken, Morrissey, Shea, Jr., and McGowan (the excluded witnesses), which the trial court granted. Citing *Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282 (*Liberty Mutual*) and section 1987.1, the court found the "notices to appear issued to officials at a high level of corporate management before exhausting less intrusive methods of discovery implicate the concerns for abuse and harassment identified in *Liberty Mutual*." The court further explained that Haghighi had not shown that he "directed interrogatories or deposition notices to lower level employees who may have had knowledge as to the actions [Shea Properties LLC] took or did not take after learning that the court had vacated the default judgment." Nor had Haghighi shown that any of the excluded witnesses had "unique or superior knowledge of discoverable information." Rather, the excluded witnesses had all submitted declarations stating they had no personal knowledge of the claims in this lawsuit, the unlawful detainer action, or Haghighi.

---

[3] Haghighi also alleged claims against the process server who claimed to have served him in 2002, Zac Paszko, and Paszko's company. It is unclear how these claims were resolved.

## III.

## THE TRIAL

At trial, Haghighi called as witnesses (1) himself, (2) Tinawin, a regional manager for Shea Management, and (3) Joshua Harnett, a senior vice president of apartment operations for Shea Management and an officer of Shea Properties LLC.

Tinawin testified that at the time Haghighi entered the lease, "Shea Properties" was the dba for J.F. Shea, which was the property manager for Woodbridge. Likewise, there was a property management agreement introduced at trial between Woodbridge and J.F. Shea dated December 12, 2001, whose title page states, "J.F. SHEA CO, INC. dba SHEA PROPERTIES." This property management agreement was signed by Woodbridge as owner and "J.F. Shea Co., Inc. dba Shea Properties" as manager.

Tinawin stated that J.F. Shea was the property manager for Woodbridge until January 2004. Starting January 1, 2004, Shea Management, also using the dba "Shea Properties," became the property manager for Woodbridge and still held this role at trial. Tinawin explained that Shea Properties LLC is an investment entity with no employees, and it had not been involved in property management for Woodbridge.

Harnett provided a general overview of the various Shea entities. As to the relationship between Shea Properties LLC and Shea Management, he explained the two entities "do two different things," and neither of these entities reports to the other. Like Tinawin, he testified that Shea Properties LLC is "an entity that invests in commercial real estate." It does not have any employees. Nor is it involved in any property management services such as leasing, collecting rent, or filing unlawful detainer actions. Harnett further specified that Shea Properties LLC has never managed property for

6

Woodbridge. Rather, Shea Management had been Woodbridge's property manager since 2004. Harnett also stated that Shea Management had not authorized Gough to levy Haghighi's account in either 2016 or 2017. He did not learn that Gough had taken these unauthorized actions until years after they had occurred.

After Haghighi closed his case, Shea Properties LLC moved for nonsuit on the conversion claim or, in the alternative, on the issue of punitive damages. As to the former, Shea Properties LLC argued Haghighi had not presented any evidence that it had been involved in levying his bank account. While Haghighi claimed that "Shea Properties" had levied his funds, there was no evidence that "Shea Properties" was Shea Properties LLC. There was also no evidence that Shea Properties LLC ever did business as "Shea Properties." Rather, the evidence showed "Shea Properties" was a dba for JF Shea and then Shea Management.

The trial court granted the nonsuit motion as to punitive damages. But it allowed Haghighi to reopen his case, so he could call Gough as a witness.

Gough testified that he had worked with "Shea Properties" since the early 1990s, but it had stopped using his services in 2010. He explained that J.F. Shea had done business as "Shea Properties" and had hired him to file the unlawful detainer action. Gough clarified that he had never represented Shea Properties LLC in any litigation.

As to the levies at issue, Gough explained that in 2010, a representative from "Shea Properties" told him a new attorney would be handling evictions but instructed him to keep collecting old eviction judgments he had obtained. This was typical of his experience as an unlawful detainer attorney. He normally only communicated with his clients about the eviction process but not the collections process. Generally, his clients cared more about

7

evicting a tenant than collecting a judgment after the tenant had been evicted. Accordingly, Gough stated no one at Woodbridge or "Shea Properties" asked him to renew the judgment in 2012. He likewise testified that no one from "Shea Properties" had asked him to obtain a writ of execution or to levy Haghighi's bank account. He also did not inform "Shea Properties" that he intended to take these steps. Nor did he transmit the levied funds to any "Shea entity." Rather, Gough still possessed the levied funds at trial.

After Gough's testimony, Shea Properties LLC renewed its nonsuit motion on the conversion claim (the nonsuit motion). This time, the court granted the nonsuit motion. It found the undisputed evidence showed (1) JF Shea using the dba "Shea Properties" hired Gough to pursue the unlawful detainer action against Haghighi; (2) Gough executed the bank levies on behalf of "Shea Properties" and the levied money was still in his account; (3) Shea Properties LLC was an investment company that did not manage apartment properties. Further, there was no evidence Shea Properties LLC ever managed or owned the apartment building. Nor was there any evidence that Shea Properties LLC ever did business as "Shea Properties."

Based on this undisputed evidence, the court concluded there was "no substantial evidence that Mr. Gough had an agency relationship with [Shea Properties LLC] with respect to the unlawful detainer action that resulted in the levies against [Haghighi's] bank account." Rather, "[t]he undisputed evidence shows that Mr. Gough's relationship was with [J.F. Shea] and [Shea Management] with respect to the unlawful detainer action."

Haghighi appeals, challenging the orders granting the nonsuit motion and the motion to quash.

8

DISCUSSION

I.

THE NONSUIT MOTION

*A. Background Law*

"A defendant is entitled to a nonsuit if the trial court determines the evidence presented by plaintiff is insufficient to permit a jury to find in his or her favor as a matter of law. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded.' [Citation.] The plaintiff's evidence, however, must have substance upon which reasonable minds can differ; evidence that raises mere conjecture or speculation is insufficient. [Citation.] The same standard applies on appeal." (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 650.)

"[A] mere scintilla of evidence does not create a conflict for the jury's resolution, for there must be substantial evidence to create the necessary conflict. [Citation.] A reviewing court will not disturb a nonsuit order when there is no substance to the plaintiff's evidence upon which reasonable minds could differ." (*Jones & Matson v. Hall* (2007) 155 Cal.App.4th 1596, 1605.)

*B. Sufficiency of the Evidence*

"'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.'" (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387.) Here, only the second element is contested. Specifically, the parties dispute whether

9

there is sufficient evidence from which a jury could find that "Shea Properties," who Gough represented, referred to Shea Properties LLC.

Haghighi's main argument begins by highlighting that Shea Properties LLC was formed on August 16, 2002, and began operating in California on November 18, 2002. Thus, it existed as an entity in 2016 through 2018, when his account was levied and the default judgment was set aside. Next, he cites testimony from Tinawin, Harnett, and Gough that none of them had seen any business filings showing either J.F. Shea or Shea Management used the dba "Shea Properties" in 2016 to 2018.[4] Haghighi also refers to Harnett's testimony that Gough was not employed by Shea Management when he levied Haghighi's account.

Based on the above evidence, Haghighi contends the jury could infer that neither J.F. Shea nor Shea Management did business as "Shea Properties" between 2016 to 2018. And since Shea Properties LLC was in existence at this time, a jury could infer that Gough was working for Shea Properties LLC when he levied Haghighi's account.

We are unpersuaded. The inference Haghighi suggests is unreasonable based on the cited evidence. Even if neither J.F. Shea nor Shea Management was doing business as "Shea Properties" from 2016 to 2018, there is no evidence suggesting Shea Properties LLC was operating as "Shea Properties" at that time or any other time. Rather, the undisputed evidence indicates Shea Properties LLC never did business as "Shea Properties" and did not hire Gough. To summarize, the relevant undisputed evidence shows (1) Shea Properties LLC never did business as "Shea Properties"; (2) Gough

---

[4] Harnett knew that JF Shea filed a dba for "Shea Properties" in 1998 and that Shea Management filed a dba for "Shea Properties" in 2004. He was also aware that dba filings expire every five years.

10

was never retained by Shea Properties LLC; (3) Shea Properties LLC is an investment company that does not manage apartment buildings; and (4) the manager of the apartment building was J.F. Shea then Shea Management.[5] Simply put, it is pure speculation to infer that Gough was working for Shea Properties LLC from 2016 to 2018.

Similarly, Haghighi contends that Shea Properties LLC ratified Gough's conduct by failing to properly investigate the levied funds or return them after learning that the default judgment had been vacated. This is another unreasonable inference. As set forth above, the undisputed evidence shows Shea Properties LLC had no role in the unlawful detainer action or the levying of Haghighi's account. It took no action because it was unconnected to either of these activities. As such, its purported inaction cannot be reasonably seen as a ratification of Gough's conduct.

Haghighi also asserts Gough's testimony that he worked for Shea Management and J.F. Shea is inconsistent with his prior filings stating that he worked for "Shea Properties." Not so. The evidence shows "Shea Properties" was a dba of J.F. Shea and then Shea Management. Thus, Gough's testimony that he worked for these entities is consistent with his court filings stating he represented "Shea Properties."

Next, Haghighi cites evidence that Gough assigned the anti-SLAPP judgment to Woodbridge. He suggests the jury could have inferred

---

[5] Haghighi attempts to argue there is an evidentiary conflict as to whether Shea Properties LLC was only an investment entity. He points to its Statement of Information filed with the Secretary of State in 2014, which describes its business as "retail real estate." This evidence is unconvincing. Nothing in this business description suggests "retail real estate" refers to property management rather than real estate investment.

11

Gough did "this because he took the money that he owed to [Shea Properties LLC] and was assigning [the anti-SLAPP judgment] in exchange." But Gough assigned the anti-SLAPP judgment to Woodbridge, not Shea Properties LLC. Haghighi's proposed motive for this assignment is only conjecture.

Finally, Haghighi argues it would be unfair to allow Shea Properties LLC to avoid liability by hiding behind the ambiguous name "Shea Properties" in its court filings in the unlawful detainer action. But Shea Properties LLC was not involved in that lawsuit. The undisputed evidence shows J.F. Shea hired Gough to pursue the unlawful detainer action. If there was any ambiguity about the specific entity behind "Shea Properties," this could have been determined by Haghighi in discovery. Indeed, following Tinawin's deposition, Shea Properties LLC's counsel offered to substitute in the proper entity: "[I]n light of [Tinawin's] testimony, we would ask that you dismiss Shea Properties, L.L.C., and we'll be happy to substitute in the proper entity." Haghighi refused this offer.

In sum, there is no substantial evidence that Shea Properties LLC converted Haghighi's funds.

## C. Motion to Quash

Haghighi argues *Liberty Mutual* does not apply here because it involved depositions of high-ranking corporate officers while this case involved notices to appear at trial. We need not address this argument. Even if the court erred, Haghighi has failed to show any resulting prejudice.

"Whether legal or factual, no error warrants reversal unless the appellant can show injury from the error." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.) In particular, an evidentiary "'error is not reversible unless "'it is reasonably probable a result more favorable to the

12

appellant would have been reached absent the error.""'" (*Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1538.)

Haghighi claims the excluded witnesses' testimony was relevant to his punitive damages request. As discussed above, though, the court properly granted nonsuit on the entire conversion claim. Thus, the punitive damages issue was moot.

In his reply brief, Haghighi contends the excluded witnesses were needed to clarify the ambiguous corporate structure of "Shea Properties" and "identify[] the entity responsible for the levies." We disregard this argument for two reasons. First, Haghighi provides no record citation indicating the excluded witnesses could have provided this testimony. Nor has he explained how their statements would have differed from Harnett's testimony. We will not make these arguments on Haghighi's behalf. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) Second, Haghighi failed to make this argument in his opening brief. To avoid unfairness to the respondent, "[a]s a general rule, points not addressed until a reply brief will not be considered unless good reason is shown for failing to address them earlier." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. 10.) Haghighi has not explained why he failed to make this argument earlier, so we will not consider it.

## DISPOSITION

The trial court's orders granting the motion to quash and the nonsuit motion are affirmed. Shea Properties LLC is entitled to the costs it incurred in this appeal.

MOORE, ACTING P. J.

WE CONCUR:

SANCHEZ, J.

DELANEY, J.